

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| UNITED STATES OF AMERICA | CIVIL ACTION NO. 05-10010-02 |
|---|---|
| VERSUS | U.S. DISTRICT JUDGE F.A. LITTLE, JR. |
| BRADLEY D. DUCOTE | U.S. MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION

Before the court are defendant's motions to suppress fruits of unlawful interrogation, Doc. #49, to dismiss counts 5 through 14 of the indictment, Doc. # 50, and to dismiss indictment for violation of Petite waiver policy and for double jeopardy, Doc. #52. These motions have been referred to me by the district judge for report and recommendation.[1]

Ducote, along with two other persons, Mr. Dufour and Mr. Wilmer, was charged with felony theft by fraud under Louisiana Revised Statutes 14:67 in the 12th Judicial District of Louisiana on June 17, 2004. The State alleged that the three had fraudulently obtained workers compensation benefits for one of the three, Mr. Dufour. Ducote's role was alleged to have been the typing of letters. Ducote pled guilty to a reduced charge of criminal mischief in state court.

On March 23, 2005, a federal indictment was returned against

---

[1] In addition, Ducote's motion for bill of particulars, Doc. #47, was referred to me and that motion has been denied by me in a separate order.

Ducote, Dufour and Wilmer arising out of the workers compensation scheme charging them with mail fraud, wire fraud, and conspiracy, the subjects of the instant proceeding.

Motion to dismiss fruits of unlawful interrogation, Document # 49.

Defendant asserts that he was interviewed by Special Agent Randy Deaton of the FBI on July 26, 2004 and was not first given his Miranda rights.[2] Ducote further asserts that he was then interviewed a second time by Agent Deaton on March 30, 2005 and, even though he was, on that occasion, given his rights, the interview was tainted by the prior unconstitutional interview. Defendant argues that because he was charged in state court with a crime arising out of the same conduct and was represented by counsel in connection with the state charges, he should have been afforded an opportunity to have his counsel present when questioned by the FBI.

Defendant suggests that, because the conduct charged in the federal indictment was "identical" to that charged by the state his right to counsel attached under the exception recognized in Texas v. Cobb, 121 S. Ct. 1335 (2001). Cobb held that although the right to counsel attaches only to charged offenses, if the offenses are the same under Blockburger v. United States, 52 S. Ct. 180 (1932), then the right to counsel applies to both offenses.

---

[2] Miranda v. Arizona, 86 S. Ct. 1602 (1966).

2

Miranda held that a suspect must be apprized of his rights against compulsory self-incrimination and to consult with an attorney before authorities may conduct *custodial* interrogation. Miranda, 86 S. Ct. at 1612. Volunteered statements of any kind are not barred by the fifth amendment. United States v. Ricardo, 619 Fed. 2d 1124 (5th Cir.), cert. den., 101 S. Ct. 789 (1980). In this case, we need not reach the issue of whether the offense of theft by fraud under state law is the same, under Blockburger, as mail and wire fraud under federal law, for the interrogation here was non-custodial.

The major factor considered in determining whether an interrogation is custodial in nature is whether the investigation has focused on the defendant at the time of the interrogation. Randall v. Estelle, 492 Fed. 2d 118, 120 (5th Cir. 1974).

Special Agent Deaton testified that he arrived unannounced at Ducote's parent's home where Ducote was present. Ducote was sitting in a recliner covered with a blanket and, it turned out, was recuperating from recent surgery.[3] Deaton admits that he did not give Ducote Miranda warnings and does not recall telling him he was a suspect or target. Ducote was free to stop the interview at any time, but never asked to. Ducote never asked for his attorney

---

[3] The testimony at the hearing does not reflect any evidence that Ducote was impaired in his ability to understand and respond to Deaton's questions nor does Ducote, through counsel argue that is the case. Deaton testified that Ducote's responses were clear and prompt and that Ducote was coherent and alert during the interview.

to be present. His parents, who were present for much of the interview, never asked Deaton to leave or for the interview to be stopped. In fact, defendant's mother invited the Agent to stay for supper. Deaton testified that these were "very nice people". Deaton further testified that Ducote was not under arrest and that the questioning was "non-custodial". Deaton did not know that Ducote had a lawyer, he testified. However, Deaton did know that defendant had already been indicted by the State. Deaton testified that if he had been asked to leave, he would have had to leave and would have had no authority to stay at the home. Deaton testified that he knew of Ducote's involvement in the conduct in question but he was not there to "work up a case for the U. S. Attorney's office" but rather was trying to gather information.

Because the interrogation was non-custodial, Miranda warnings were not required. This motion should be DENIED.

Motion to dismiss counts 5 through 14 of the indictment.

Defendant argues that because Mr. Dufour was entitled to some amount of workers compensation, the use of the mails and wires were not used for the purpose of committing a fraud as to the "extra" money claimed.

To establish the essential elements of a violation of 18 U.S.C. 1341 the government must show that the defendant (1) used a scheme to defraud, (2) which involved a use of the mails, (3) and that the mails were used for the purpose of executing the scheme.

4

United States v. Pazos, 24 Fed. 3d 660, 665 (5th Cir. 1994). The provisions of the wire fraud statute, 18 U.S.C. 1343 are similar. The conduct alleged against the defendant "involved a use of" the mails and wires. The fact that the communications may have also had a legitimate purpose dose not alter the fact that they were (it is alleged) used for an illicit purpose. Indeed this case is similar to United States v. Talbott, 590 Fed.2d 192 (6th Cir. 1978)in which case dentists billed for services which were not performed, although other services, for which the dentists would presumably have been entitled to payment, had been performed. This motion should be DENIED.

Motion to dismiss indictment for violation of the Petite waiver policy and for double jeopardy.

Ducote first contends that, because the U. S. Attorney violated its internal policy, the charges against him should be dismissed. The Petite policy is an internal policy of the Justice Department which prohibits a federal prosecution of a defendant who has been convicted in state court for the same conduct unless the subsequent prosecution is specifically authorized by the Attorney General of the United States. See Petite v. United States, 80 S. Ct. 450 (1960).

In this case, the government has represented to the court that it has in fact complied with its policy and that the proper authorization was obtained. Regardless, however, a criminal

defendant may not invoke the protection of the Petite policy as a bar to prosecution. <u>United States v. Rodriquez</u>, 948 Fed.2d 914, 915 (5th Cir. 1991).

Next, defendant contends that "the government's discovery responses strongly suggest that there was cooperation between state and federal authorities during the state prosecution of Mr. Ducote." Defendant requested a hearing to "develop these issues". The hearing was held on Monday, October 3, 2005 but the evidence failed to show collusion between the two sovereigns.

There is no double jeopardy prohibition against an individual being prosecuted by dual sovereigns for an act that violates the laws of both sovereigns. <u>United States v. Moore</u>, 958 Fed.2d 646, 650 (5th Cir. 1992), cert. den. 114 S. Ct. 647 (19993). The Supreme Court has suggested that an exception to the dual sovereign doctrine exists where prosecution by one sovereign is used as a tool for successive prosecution by the other sovereign. <u>Bartkus v. Illinois</u>, 79 S. Ct. 676 (1959). When a defendant claims collusion between federal and state law enforcement officials, the defendant has the burden of producing evidence to show a prima facie double jeopardy claim. <u>United States v. Cooper</u>, 949 Fed. 2d 737 (5th Cir. 1991).

Special Agent Deaton testified that before he interviewed defendant he spoke with a state police investigator and his sergeant. The state police gave Deaton an overview about the case

and what had transpired with the case. Deaton decided to look at possible federal violations. The Louisiana state police referred the case to the Avoyelles Parish District Attorney and Deaton later learned that Ducote and Dufour would plead to criminal mischief and that Wilmer's charges had been dismissed.

Deaton received a copy of the investigative file from the state police. However, Deaton said he doesn't remember having given a copy of his report to the state police. As of the date the FBI interviewed Ducote, the Louisiana State Police were no longer involved, having already referred their investigation to the district attorney's office.

Importantly, Deaton testified that at no time did he consult with the district attorney's office during the prosecution of Mr. Ducote in state court. Deaton did not offer the district attorney planning or strategic advice concerning the state charges. Neither did Deaton receive advice rom the district attorney or from state investigators as to how to prosecute Ducote on the federal charges. Deaton had no discussions with the state authorities regarding whether Ducote should be prosecuted by the state or by the federal government. Deaton is not aware of a federal prosecutor working with the state regarding charges against Ducote. Deaton never collected evidence for the purpose of sharing it with the state authorities. Deaton did not maintain any regular course of communication between his office and the state authorities as to

7

strategy or prosecution. Deaton exercised no control over the state prosecution, he testified.

I find that the evidence presented by the defendant, through counsel, falls far short of a prima facie case of collusion which could constitute a valid double jeopardy claim. Therefore, this motion should be DENIED.

## Conclusion

For the foregoing reasons, IT IS RECOMMENDED that defendant's motions, Documents 49, 50 and 52, be DENIED.

## **OBJECTIONS**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the district judge at the time of filing. Timely objections will be considered by the district judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UN-OBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL**

**CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Alexandria, Louisiana, on this the 11th day of October, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE